1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

11   PROFITSTREAMS, LLC,                          CASE NO. 11 CV 0766 MMA (JMA)

12                          Petitioner,    **ORDER GRANTING IN PART
                                            AND DENYING IN PART
13          vs.                             PROFITSTREAMS LLC'S
                                            PETITION TO COMPEL
14   AMERANTH, INC.,                        ARBITRATION**

15                          Respondent.     [Doc. No. 1]

16          On April 13, 2011, Profitstreams, LLC filed a petition to compel arbitration against

17   Ameranth, Inc.  [Doc. No. 1.]  Ameranth submitted its response on September 2, and Profitstreams

18   filed a reply on September 19.  [Doc. Nos. 24, 25.]  On September 21, 2011, the Court in its

19   discretion under Civil Local Rule 7.1(d)(1), took the motion under submission on the papers and

20   without oral argument.  For the reasons stated herein, the Court **GRANTS IN PART** and

21   **DENIES IN PART** Profitstreams' petition to compel arbitration.

22                                    BACKGROUND

23          On August 27, 2008, Profitstreams and Ameranth entered a Second Amended and Restated

24   License Agreement ("Agreement"), under which Profitstreams obtained a license for certain

25   technology owned by Ameranth.  [Doc. No. 1, Exh. A; Doc. No. 9 (under seal).]  A dispute has

26   arisen between the parties regarding the scope of the Agreement.  [Doc. No. 1, p.3.]  Profitstreams

27   alleges it "believes that the license in the Agreement covers all of the claims" of the patents at

28   issue, whereas Ameranth "contends that the license granted in the Agreement is limited to the

1   subset of claims practiced by the Software."  [*Id.* at p.1]  Correspondence between counsel

2   indicates the parties discussed the issue informally, but were unable to resolve their dispute.  [Doc.

3   No. 24-3, Exhs. 4-18.]  Profitstreams therefore seeks to initiate arbitration proceedings as

4   contemplated by the Agreement.  [*Id.* at Exhs. 1-15.]

5          The Agreement contains the following dispute resolution provisions:

6          **14.2      Governing Law and Dispute Resolution:**

7                 14.2.1  . . .

8                 14.2.2  <u>Any dispute arising out of or in connection with this</u>
                          <u>Agreement,</u> including any question regarding its existence,

9                         validity or termination, <u>shall first be referred to each Party's</u>
                          <u>appointed management, and the Parties shall use reasonable</u>

10                        <u>efforts to resolve such dispute.</u>

11                14.2.3  <u>Any dispute that is not resolved as provided in the preceding</u>
                          <u>Section 14.2.2,</u> whether before or after termination of this

12                        Agreement, <u>will be referred to binding arbitration</u> under the
                          Commercial Arbitration Rules of the American Arbitration

13                        Association in the city and state where the defendant party has
                          its headquarters.  Except with respect to a breach of Section 2.5

14                        or any other unauthorized transfer of Ameranth's intellectual
                          property or proprietary rights, the arbitrator shall not be

15                        authorized to award, and no party shall be obligated to pay to
                          the other Party hereunder, punitive, exemplary, consequential,

16                        indirect, special or incidental damages or lost profits
                          (collectively "***Special Damages***") with respect to any such

17                        claim or controversy, nor shall any party seek Special Damages
                          relating to any matter under, arising out of or relating to this

18                        Agreement in any other forum.  Judgment upon the award of
                          the arbitrators may be entered in any court having jurisdiction

19                        thereof or such court may be asked to judicially confirm the
                          award and order its enforcement, as the case may be.

20                14.2.4  . . .

21
                  14.2.5  <u>Notwithstanding anything to the contrary in this Section 14,</u>

22                        <u>either Party shall be entitled to seek injunctive relief in any</u>
                          <u>court of competent jurisdiction for a breach or threatened</u>

23                        <u>breach of Section 13 or any infringement of such Party's</u>
                          <u>intellectual property or proprietary rights.</u>

24

25  [Doc. No. 1, Exh. A, p.16 (bold and italics in original) (underline added).]

26          Ultimately, the parties reached an impasse regarding which claims could be sent to

27  arbitration, and Profitstreams filed the pending petition to compel Ameranth to arbitrate their

28  dispute regarding the scope of the license.  [Doc. No. 1.]

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., governs the enforcement, interpretation and validity of arbitration clauses in commercial contracts. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914 *7 (9th Cir. 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983)). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. This language creates a presumption in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 (1985); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).

To enforce a valid arbitration agreement, a party "may petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement." *Lansmont Corp. v. SPX Corp.*, 2011 U.S. Dist. LEXIS 65611 *16 (N.D. Cal. Jun. 20, 2011) (internal marks omitted) (citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4)); *In re: Virginia Van Dusen*, 2011 U.S. App. LEXIS 15398 *9-10 (9th Cir. July 27, 2011). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626. Any doubts regarding the validity of an arbitration clause must be resolved in favor of arbitration. *Id*. Accordingly, the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

When a party files a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id*. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which

1 an arbitration agreement has been signed." *Id.* (citation omitted); *In re: Virginia Van Dusen*, 2011

2 U.S. App. LEXIS at *9-10.

3 **DISCUSSION**

4     Neither party challenges the validity of the arbitration agreement at issue.  Rather, the

5 parties primarily dispute which claims are arbitrable, and who should decide future issues of

6 arbitrability.  Accordingly, the Court assumes the arbitration provision is valid and enforceable for

7 purposes of resolving the pending petition.

8     To determine whether the agreement to arbitrate encompasses the parties' dispute, the

9 Court must first determine the scope of the arbitration clause.  Section 14.2.3 of the Agreement

10 states, in relevant part, that "any dispute arising out of or in connection with this Agreement,

11 including any question regarding its existence, validity or termination," that cannot be resolved by

12 the parties informally, "will be referred to binding arbitration."  [Doc. No. 1, Exh. A.]  The sole

13 exception is noted in section 14.2.5, which states "[n]otwithstanding anything to the contrary in

14 this Section 14, either Party shall be entitled to seek injunctive relief in any court of competent

15 jurisdiction for a breach or threatened breach of Section 13 or any infringement of such Party's

16 intellectual property or proprietary rights."  [*Id.*]

17     Here, the parties' underlying dispute centers on their disagreement about the scope of the

18 license Ameranth provided to Profitstreams.  [*See* Doc. No. 1, p.1, 3.]  The scope of the license

19 granted under the Agreement plainly qualifies as a dispute "arising out of" the Agreement, and is

20 therefore subject to arbitration.  Likewise, Ameranth's contention that Profitstreams has breached

21 its obligations under the Agreement "arises out of and in connection with" the Agreement.  Indeed,

22 the record reveals the parties do not dispute their underlying dispute encompasses the following

23 four claims, which are subject to arbitration: (1) Profitstreams' claim for declaratory relief as to the

24 scope of the patent license under the Agreement; (2) Profitstreams' claim for rescission of the

25 Agreement on the ground of lack of meeting of the minds; (3) Ameranth's claim for declaratory

26 relief as to the scope of the patent license under the Agreement; and (4) Ameranth's claim for

27 breach of the Agreement.  [Doc. No. 24, p.8-9; Doc. No. 25, p.2.]

28 / / /

1    The parties were unable to successfully initiate arbitration proceedings after Ameranth

2   proposed the parties stipulate that "neither party could amend or add claims without the consent of

3   the other party." [Doc. No. 24, p. 9; Doc. No. 24-3, Exhs. 11-15.]  Profitstreams refused to agree

4   to the additional limitation, asserting, in part, that it is inconsistent with the Commercial

5   Arbitration Rules of the American Arbitration Association ("AAA"), specifically Rule R-6, which

6   vests the arbitrator with the authority to approve a party's request to add or amend claims.[1]  [Doc.

7   No. 25, p.3.]  Profitstreams therefore proposes that the parties agree to let the arbitrator determine

8   which claims could be added to the arbitration proceedings if the issue arose.  [Doc. No. 24-3,

9   Exh. 13.]  Ameranth declines to accept this stipulation on the ground that the Court, not the

10   arbitrator, should be the one to decide which issues are arbitrable.  [*Id.*]

11    The Court's ability to resolve this dispute is limited.  As stated above, in determining

12   whether an order to compel arbitration should issue, the Court's analysis is limited to two discrete

13   inquiries:  "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

14   agreement encompasses the dispute at issue."  *Chiron Corp.*, 207 F.3d at 1130 (citations omitted).

15   Here, the answer to both questions is "yes," as the parties agree the arbitration clause is valid and

16   enforceable, and they do not dispute that the four enumerated issues fall within the scope of the

17   arbitration provision.  Accordingly, the Court is required to direct the parties to proceed with

18   arbitration in accordance with the terms of their Agreement.  *Id.* (citation omitted); *In re: Virginia*

19   *Van Dusen*, 2011 U.S. App. LEXIS at *9-10.

20    For the same reason, the Court cannot impose either party's proposed condition in

21   connection with ordering the parties to arbitration, because the Court must enforce the arbitration

22   agreement as written.  Here, the plain language of the arbitration provision does not support either

23   

24    [1] Section 14.2.3 states the parties agreed the Commercial Arbitration Rules of the AAA shall govern their arbitration proceedings.  AAA Commercial Rule R-6 provides:

25    After filing of a claim, if either party desires to make any new or
26    different claim or counterclaim, it shall be made in writing and filed
      with the AAA. The party asserting such a claim or counterclaim shall
      provide a copy to the other party, who shall have 15 days from the date
27    of such transmission within which to file an answering statement with
      the AAA. After the arbitrator is appointed, however, no new or
28    different claim may be submitted except with the arbitrator's consent.

party's request to include limiting language regarding who may resolve questions of arbitrability after arbitration is commenced.  In the absence of clear and unmistakable language to the contrary, "[i]t is well established that the question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination." *Oracle Am., Inc. v. Myriad Group AG*, 2011 U.S. Dist. LEXIS 98830 *14-15 (N.D. Cal. Sept. 1, 2011) (emphasis in original) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("If . . . the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration")).  Although the Agreement makes clear the parties agreed the Commercial Rules of the AAA would govern arbitration proceedings, the record does not contain clear and unmistakable evidence that the parties did not intend to submit questions of arbitrability to the courts.  The parties may not now condition their participation in arbitration proceedings on the other party's acquiescence to additional limitations not set forth in their Agreement.

In addition, the Court will not prospectively advise the parties whether additional unidentified, hypothetical issues are subject to arbitration.  As framed by the parties, the only discernable issues are: (1) Profitstreams' claim for declaratory relief as to the scope of the patent license under the Agreement; (2) Profitstreams' claim for rescission of the Agreement on the ground of lack of meeting of the minds; (3) Ameranth's claim for declaratory relief as to the scope of the patent license under the Agreement; and (4) Ameranth's claim for breach of the Agreement. [Doc. No. 24, p.8-9; Doc. No. 25, p.2.]  Any other questions of arbitrability are anticipatory, undefined, and not ripe for judicial determination.

Accordingly, the Court **GRANTS** Profitstreams' petition to compel arbitration **IN PART** with respect to the four enumerated issues, but **DENIES** the petition **IN PART** with respect to any other issues not currently before this Court.  Also, the Court cannot appoint the AAA to arbitrate the parties' dispute.  The Court's role is limited to enforcement of the terms of the valid arbitration agreement, which does not designate the AAA as the agreed upon arbitration service. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (citation omitted).

1    The Court therefore **DENIES** the petition with respect to Profitstreams' request to designate the

2    AAA as the required arbitration service.

3        Lastly, the Court **DENIES** Profitstreams' request for attorneys' fees, as the Agreement

4    does not provide that Profitstreams is entitled to such recovery.  Nor does Profitstreams cite any

5    authority upon which the Court might rely to impose a fee award.  Accordingly, each party shall

6    bear its own fees and costs associated with the petition to compel.

7                               C<small>ONCLUSION</small>

8        For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART**

9    Profitstreams' petition to compel arbitration.  [Doc. No. 1.]  The Court hereby **ORDERS** the

10    parties to arbitration, through a mutually agreeable service provider, to resolve the following

11    issues in accordance with their Agreement:

12        (1)    Profitstreams' claim for declaratory relief as to the scope of the patent license under

13                the Agreement;

14        (2)    Profitstreams' claim for rescission of the Agreement on the ground of lack of

15                meeting of the minds;

16        (3)    Ameranth's claim for declaratory relief as to the scope of the patent license under

17                the Agreement; and

18        (4)    Ameranth's claim for breach of the Agreement.

19    The Clerk of Court is instructed to close the case file.

20    **IT IS SO ORDERED.**

21

22    DATED:  September 27, 2011

23                                       Hon. Michael M. Anello

24                                       United States District Judge

25

26

27

28