# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROFITSTREAMS, LLC,<br><br>                                Petitioner,<br>vs.<br><br>AMERANTH, INC.,<br><br>                                Respondent. | CASE NO. 11 CV 0766 MMA (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PROFITSTREAMS LLC'S PETITION TO COMPEL ARBITRATION**<br><br>[Doc. No. 1] |

On April 13, 2011, Profitstreams, LLC filed a petition to compel arbitration against Ameranth, Inc. [Doc. No. 1.] Ameranth submitted its response on September 2, and Profitstreams filed a reply on September 19. [Doc. Nos. 24, 25.] On September 21, 2011, the Court in its discretion under Civil Local Rule 7.1(d)(1), took the motion under submission on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Profitstreams' petition to compel arbitration.

## BACKGROUND

On August 27, 2008, Profitstreams and Ameranth entered a Second Amended and Restated License Agreement ("Agreement"), under which Profitstreams obtained a license for certain technology owned by Ameranth. [Doc. No. 1, Exh. A; Doc. No. 9 (under seal).] A dispute has arisen between the parties regarding the scope of the Agreement. [Doc. No. 1, p.3.] Profitstreams alleges it "believes that the license in the Agreement covers all of the claims" of the patents at issue, whereas Ameranth "contends that the license granted in the Agreement is limited to the

subset of claims practiced by the Software." [*Id*. at p.1] Correspondence between counsel indicates the parties discussed the issue informally, but were unable to resolve their dispute. [Doc. No. 24-3, Exhs. 4-18.] Profitstreams therefore seeks to initiate arbitration proceedings as contemplated by the Agreement. [*Id.* at Exhs. 1-15.]

The Agreement contains the following dispute resolution provisions:

**14.2 Governing Law and Dispute Resolution:**

14.2.1 . . .

14.2.2 <u>Any dispute arising out of or in connection with this Agreement</u>, including any question regarding its existence, validity or termination, <u>shall first be referred to each Party's appointed management, and the Parties shall use reasonable efforts to resolve such dispute.</u>

14.2.3 <u>Any dispute that is not resolved as provided in the preceding Section 14.2.2</u>, whether before or after termination of this Agreement, <u>will be referred to binding arbitration</u> under the Commercial Arbitration Rules of the American Arbitration Association in the city and state where the defendant party has its headquarters. Except with respect to a breach of Section 2.5 or any other unauthorized transfer of Ameranth's intellectual property or proprietary rights, the arbitrator shall not be authorized to award, and no party shall be obligated to pay to the other Party hereunder, punitive, exemplary, consequential, indirect, special or incidental damages or lost profits (collectively "***Special Damages***") with respect to any such claim or controversy, nor shall any party seek Special Damages relating to any matter under, arising out of or relating to this Agreement in any other forum. Judgment upon the award of the arbitrators may be entered in any court having jurisdiction thereof or such court may be asked to judicially confirm the award and order its enforcement, as the case may be.

14.2.4 . . .

14.2.5 <u>Notwithstanding anything to the contrary in this Section 14, either Party shall be entitled to seek injunctive relief in any court of competent jurisdiction for a breach or threatened breach of Section 13 or any infringement of such Party's intellectual property or proprietary rights.</u>

[Doc. No. 1, Exh. A, p.16 (bold and italics in original) (underline added).]

Ultimately, the parties reached an impasse regarding which claims could be sent to arbitration, and Profitstreams filed the pending petition to compel Ameranth to arbitrate their dispute regarding the scope of the license. [Doc. No. 1.]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement, interpretation and validity of arbitration clauses in commercial contracts. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914 *7 (9th Cir. 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. This language creates a presumption in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 (1985); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).

To enforce a valid arbitration agreement, a party "may petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement." *Lansmont Corp. v. SPX Corp.*, 2011 U.S. Dist. LEXIS 65611 *16 (N.D. Cal. Jun. 20, 2011) (internal marks omitted) (citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4)); *In re: Virginia Van Dusen*, 2011 U.S. App. LEXIS 15398 *9-10 (9th Cir. July 27, 2011). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626. Any doubts regarding the validity of an arbitration clause must be resolved in favor of arbitration. *Id.* Accordingly, the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

When a party files a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed." *Id.* (citation omitted); *In re: Virginia Van Dusen*, 2011 U.S. App. LEXIS at *9-10.

## DISCUSSION

Neither party challenges the validity of the arbitration agreement at issue. Rather, the parties primarily dispute which claims are arbitrable, and who should decide future issues of arbitrability. Accordingly, the Court assumes the arbitration provision is valid and enforceable for purposes of resolving the pending petition.

To determine whether the agreement to arbitrate encompasses the parties' dispute, the Court must first determine the scope of the arbitration clause. Section 14.2.3 of the Agreement states, in relevant part, that "any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination," that cannot be resolved by the parties informally, "will be referred to binding arbitration." [Doc. No. 1, Exh. A.] The sole exception is noted in section 14.2.5, which states "[n]otwithstanding anything to the contrary in this Section 14, either Party shall be entitled to seek injunctive relief in any court of competent jurisdiction for a breach or threatened breach of Section 13 or any infringement of such Party's intellectual property or proprietary rights." [*Id.*]

Here, the parties' underlying dispute centers on their disagreement about the scope of the license Ameranth provided to Profitstreams. [*See* Doc. No. 1, p.1, 3.] The scope of the license granted under the Agreement plainly qualifies as a dispute "arising out of" the Agreement, and is therefore subject to arbitration. Likewise, Ameranth's contention that Profitstreams has breached its obligations under the Agreement "arises out of and in connection with" the Agreement. Indeed, the record reveals the parties do not dispute their underlying dispute encompasses the following four claims, which are subject to arbitration: (1) Profitstreams' claim for declaratory relief as to the scope of the patent license under the Agreement; (2) Profitstreams' claim for rescission of the Agreement on the ground of lack of meeting of the minds; (3) Ameranth's claim for declaratory relief as to the scope of the patent license under the Agreement; and (4) Ameranth's claim for breach of the Agreement. [Doc. No. 24, p.8-9; Doc. No. 25, p.2.]

///

The parties were unable to successfully initiate arbitration proceedings after Ameranth proposed the parties stipulate that "neither party could amend or add claims without the consent of the other party." [Doc. No. 24, p. 9; Doc. No. 24-3, Exhs. 11-15.] Profitstreams refused to agree to the additional limitation, asserting, in part, that it is inconsistent with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), specifically Rule R-6, which vests the arbitrator with the authority to approve a party's request to add or amend claims.[1] [Doc. No. 25, p.3.] Profitstreams therefore proposes that the parties agree to let the arbitrator determine which claims could be added to the arbitration proceedings if the issue arose. [Doc. No. 24-3, Exh. 13.] Ameranth declines to accept this stipulation on the ground that the Court, not the arbitrator, should be the one to decide which issues are arbitrable. [*Id.*]

The Court's ability to resolve this dispute is limited. As stated above, in determining whether an order to compel arbitration should issue, the Court's analysis is limited to two discrete inquiries: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citations omitted). Here, the answer to both questions is "yes," as the parties agree the arbitration clause is valid and enforceable, and they do not dispute that the four enumerated issues fall within the scope of the arbitration provision. Accordingly, the Court is required to direct the parties to proceed with arbitration in accordance with the terms of their Agreement. *Id.* (citation omitted); *In re: Virginia Van Dusen*, 2011 U.S. App. LEXIS at *9-10.

For the same reason, the Court cannot impose either party's proposed condition in connection with ordering the parties to arbitration, because the Court must enforce the arbitration agreement as written. Here, the plain language of the arbitration provision does not support either

---

[1] Section 14.2.3 states the parties agreed the Commercial Arbitration Rules of the AAA shall govern their arbitration proceedings. AAA Commercial Rule R-6 provides:

> After filing of a claim, if either party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

1  party's request to include limiting language regarding who may resolve questions of arbitrability
2  after arbitration is commenced.  In the absence of clear and unmistakable language to the contrary,
3  "[i]t is well established that the question whether the parties have submitted a particular dispute to
4  arbitration, i.e., the question of arbitrability, is an issue for judicial determination."  *Oracle Am.,*
5  *Inc. v. Myriad Group AG*, 2011 U.S. Dist. LEXIS 98830 *14-15 (N.D. Cal. Sept. 1, 2011)
6  (emphasis in original) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First*
7  *Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("If . . . the parties did not agree to
8  submit the arbitrability question itself to arbitration, then the court should decide that question just
9  as it would decide any other question that the parties did not submit to arbitration")).  Although the
10  Agreement makes clear the parties agreed the Commercial Rules of the AAA would govern
11  arbitration proceedings, the record does not contain clear and unmistakable evidence that the
12  parties did not intend to submit questions of arbitrability to the courts.  The parties may not now
13  condition their participation in arbitration proceedings on the other party's acquiescence to
14  additional limitations not set forth in their Agreement.
15  In addition, the Court will not prospectively advise the parties whether additional
16  unidentified, hypothetical issues are subject to arbitration.  As framed by the parties, the only
17  discernable issues are: (1) Profitstreams' claim for declaratory relief as to the scope of the patent
18  license under the Agreement; (2) Profitstreams' claim for rescission of the Agreement on the
19  ground of lack of meeting of the minds; (3) Ameranth's claim for declaratory relief as to the scope
20  of the patent license under the Agreement; and (4) Ameranth's claim for breach of the Agreement.
21  [Doc. No. 24, p.8-9; Doc. No. 25, p.2.]  Any other questions of arbitrability are anticipatory,
22  undefined, and not ripe for judicial determination.
23  Accordingly, the Court **GRANTS** Profitstreams' petition to compel arbitration **IN PART**
24  with respect to the four enumerated issues, but **DENIES** the petition **IN PART** with respect to any
25  other issues not currently before this Court.  Also, the Courtcannot appoint the AAA to arbitrate
26  the parties' dispute.  The Court's role is limited to enforcement of the terms of the valid arbitration
27  agreement, which does not designate the AAA as the agreed upon arbitration service.
28  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (citation omitted).

1  The Court therefore **DENIES** the petition with respect to Profitstreams' request to designate the
2  AAA as the required arbitration service.
3       Lastly, the Court **DENIES** Profitstreams' request for attorneys' fees, as the Agreement
4  does not provide that Profitstreams is entitled to such recovery. Nor does Profitstreams cite any
5  authority upon which the Court might rely to impose a fee award. Accordingly, each party shall
6  bear its own fees and costs associated with the petition to compel.

## CONCLUSION

7
8       For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART**
9  Profitstreams' petition to compel arbitration. [Doc. No. 1.] The Court hereby **ORDERS** the
10 parties to arbitration, through a mutually agreeable service provider, to resolve the following
11 issues in accordance with their Agreement:
12     (1)    Profitstreams' claim for declaratory relief as to the scope of the patent license under
13           the Agreement;
14     (2)    Profitstreams' claim for rescission of the Agreement on the ground of lack of
15           meeting of the minds;
16     (3)    Ameranth's claim for declaratory relief as to the scope of the patent license under
17           the Agreement; and
18     (4)    Ameranth's claim for breach of the Agreement.
19 The Clerk of Court is instructed to close the case file.
20 **IT IS SO ORDERED.**
21
22 DATED: September 27, 2011
23                                     Hon. Michael M. Anello
24                                     United States District Judge
25
26
27
28